UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

OVERHEAD DOOR CORPORATION f/k/a
OVERHEAD DOOR COMPANY OF
NEW YORK, INC.,

   Plaintiff,

v.

NORWALK OVERHEAD DOOR COMPANY,
LLC f/k/a OVERHEAD DOOR COMPANY OF
NORWALK, INC.,

   Defendant.

Case No.:

June 5, 2013

## COMPLAINT

Plaintiff Overhead Door Corporation f/k/a Overhead Door Company of New York, Inc. ("ODC") for its Complaint against defendant Norwalk Overhead Door Company, LLC f/k/a Overhead Door Company of Norwalk, Inc. ("ODCN") hereby alleges, as follows:

### NATURE OF ACTION

1. This is an action arising under the Trademark Laws of the Unites States, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), and in particular for (a) trademark infringement, in violation of 15 U.S.C. § 1141(1); (b) false designation of origin, in violation of 15 U.S.C. § 1125(a); (c) unfair competition, in violation of 15 U.S.C. § 1125(a); and (d) trademark dilution, in violation of 15 U.S.C. § 1125(c). This is also an action for breach of contract, specific performance, and declaratory judgment as set forth below. ODC seeks damages, specific performance, declaratory judgment, injunctive relief, pre- and post-judgment interest and costs and attorney's fees.

## PARTIES

2. Plaintiff ODC is an Indiana domestic corporation with a principal office in Lewisville, Texas.

3. Upon information and belief, Defendant ODCN is a Connecticut domestic limited liability company with its principal place of business in Norwalk, Connecticut.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action and of the parties pursuant to 28 U.S.C. §§ 1331, 1338 and 1367; 15 U.S.C § 1121; and the doctrine of supplemental jurisdiction. In addition, the Court has jurisdiction over the claims asserted in this matter pursuant to 28 U.S.C. § 1332(a), in that the matter in controversy between ODC and ODCN exceeds the sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship between the parties in that ODC is a citizen of Texas and Indiana and ODCN is a citizen of Connecticut.

5. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(c) because ODCN is located in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district and had their effects in this district.

## FACTUAL ALLEGATIONS

6. ODC is a leading manufacturer in the garage door industry and provides overhead and garage door systems for residential, commercial, industrial and transportation applications.

7. It created the original overhead garage door in 1921 and the first electric garage door opener in 1926.

8. ODC has 78 regional sales centers and more than 5,000 distributors and dealers that service national builders, national accounts, architects, general contractors and homeowners, as well as major retailers in the U.S. and Canada.

9. ODCN specializes in distributing to customers residential and light commercial garage doors from different manufacturers.

*Trademark Ownership*

10. ODC is the owner of U.S. Trademark Registration No. 1,807,028 for a design mark of a ribbon banner (the "'028 Ribbon Mark"), which is registered in respect to "upward acting metal doors, particularly garage doors, rolling service doors, rolling fire doors, rolling grilles, rolling counter doors, service counter doors and rolling curtain doors; metal sliding grilles." A copy of the Certificate of Registration is attached as **Exhibit A**, and is incorporated herein by reference.

11. ODC owns extensive rights in the '028 Ribbon Mark, such that it has come to be associated with high quality goods and in the minds of consumers as designating goods of particular origin, namely, with ODC.

12. As a result of the long and extensive use and advertisement of the '028 Ribbon Mark in connection with ODC's goods, the '028 Ribbon Mark has become closely associated with ODC, has become exceedingly well-recognized and has acquired great value, and identifies ODC and its goods exclusively.

*Distribution Agreement*

13. ODC and ODCN entered into a Distributor's Agreement dated July 1, 1969 ("Distribution Agreement") whereby ODCN was to purchase products made by ODC for resale to customers.[1]

14. Specifically, ODCN agreed to resale products manufactured or sold by ODC, such as "upward-acting doors . . . and door operators for use in connection with such upward-acting doors, door sections, parts, accessories and equipment therefor."

15. As part of this Distribution Agreement, ODCN was granted the right to use the name "Overhead Door Company of Norwalk, Inc." and a limited license to use certain of ODC's intellectual property (collectively the "ODC Marks") only on or in connection with the sales of products purchased from ODC. ODC expressly reserved its right to withhold or withdraw the license at any time.

16. The Distribution Agreement provided that "[t]hrough extensive advertising and maintenance of the quality of the products and of the services rendered in connection with the sale, installation and service thereof, public good will has attached to the products identified" by the ODC Marks.

17. ODCN agreed "not [to] use any of the [ODC Marks] on, or in the sale or promotion of the sale of, any product unless it is purchased from [ODC] or constitutes a door structure embodying a complete set of hardware or fixtures manufactured by or furnished to [ODCN] by [ODC]."

18. ODCN agreed to use its best effort to promote the sales of ODC's products, and to devote "sufficient time and effort" to its distributorship.

---

[1] The Distribution Agreement was entered into by the parties' predecessors: Overhead Door Company of New York, Inc. and Overhead Door Company of Norwalk, Inc.

4

19. As part of the Distribution Agreement, ODCN was to contract for the standard "OVERHEAD DOOR" "listing in all telephone directories with 25,000 circulation and over" in its distribution area and the "standard Trade-Name listing in all telephone directories from 10,000 to 25,000 circulation" in its distribution area.

20. The Distribution Agreement expressed that the agreement "and all such rights and obligations may . . . be terminated by either party hereto at any time for any reason by the giving of 60 days' written notice of such termination to the party."

21. The Distribution Agreement expressly provided for actions to be taken by ODCN if the Distribution Agreement was terminated or ODC withdrew its permission and approval for ODCN to use the ODC Marks. Specifically, the Distribution Agreement required ODCN to "discontinue the use of the distributor's name and the use of the [ODC Marks], including without limitation the trade names 'OVERHEAD DOOR' and 'OVERHEAD.'" Discontinued use also includes use of the '028 Ribbon Mark.

22. Upon termination, ODCN was also required to advise the telephone company or companies in its distribution area that "the telephone numbers used in connection" with its business under the Distribution Agreement were to be retained by ODC or subject to ODC's direction for use by others. At least two such telephone numbers are 203-838-3020 and 203-853-9936.

23. ODCN acknowledged in the Distribution Agreement that it understood and recognized that the obligations imposed under this termination provision related to "items of a unique nature and are otherwise of such a nature as not to be compensable by damages and therefore agree that specific performance of any such obligations made be decreed in an appropriate proceeding."

*Termination of the Distribution Agreement*

24.     On December 7, 2009, ODC sent ODCN a letter concerning ODCN's overall sales performance. In this letter, ODC reiterated that the Distribution Agreement called for ODCN to use its "best effort to promote the sales of all products covered by the agreement." It also provided notice that "[l]ack of a plan and/or immediate and significant improvement in sales performance will result in termination of the distributor agreement." This was ODCN's third letter concerning ODCN's overall sales performance and ODC's concerns.

25.     On March 24, 2011, ODC issued a letter to ODCN terminating the Distribution Agreement in accordance to its terms "effective sixty (60) days from the date of this letter" and requested ODCN to comply with the provision setting forth the actions to be taken by ODCN on termination. It alerted ODCN that it could not "continue to do business under any name that uses the terms 'Overhead' or 'Overhead Door'" and directed ODCN to "advise the telephone company that provides [it] service for [its] business that [its] business telephone number shall be transferred to [ODC] upon effect of the termination of [its] Distributorship."

26.     There is currently an open balance due to ODC on ODCN's account for the amount of $22,867.26.

27.     As of the date of this Complaint, ODCN has not paid the balance of its account and, despite due demand, refuses to transfer or cease using its telephone number in violation of the Distribution Agreement.

28.     ODCN continues to use the tradenames "OVERHEAD DOOR" and "OVERHEAD" in violation of the Distribution Agreement.

29.     Upon information and belief, after termination, ODCN used and/or continues to use the '028 Ribbon Mark in violation of the Lanham Act.

***ODCN's Current Business Activities and Unauthorized/Improper Use of the ODC Marks***

30. Shortly after termination, on April 15, 2011, ODCN changed its name with the Connecticut Secretary of State and reorganized from "Overhead Door Company of Norwalk, Inc." to "Norwalk Overhead Door Company LLC." This name change did not, and cannot, cure ODCN's violation of the Distribution Agreement's prohibition against using "OVERHEAD DOOR" or "OVERHEAD" in the distributor's name after termination, and ODCN remains in breach of the Distribution Agreement in this respect.

31. As of the date of this Complaint, ODCN continues to operate its business selling residential and light commercial garage doors. Upon information and belief, it is currently affiliated with Cloplay® and Liftmaster®, which both manufacture garage door products. ODCN no longer sells any of ODC's products.

32. On January 18, 2013, after earlier efforts to resolve the outstanding issues failed, ODC, through undersigned counsel, sent ODCN a letter demanding, among other things, that it comply with its post-termination commitments under the Distribution Agreement. Specifically, the letter demanded that ODCN comply with the Distribution Agreement and remit payment of $22,876.26, which was the amount then outstanding, change its legal name, cease using the ODC Marks in any of its business activities, remove all references to the ODC Marks in connection with any website, logos, signs or advertising used in ODCN's business, and immediately assign all telephone numbers associated with or that had been used in connection with the distributorship or the ODC Marks to ODC.

33. Discussions between the parties continued after the January 18, 2013 letter, but no resolution was reached.

34. ODCN's failure to comply with its post-termination obligations constitutes a violation of the Distribution Agreement.

35. Upon information and belief, ODCN used and/or continues to use the '028 Ribbon Mark in connection with selling of products to consumers, which infringes upon ODC's rights in that mark.

## COUNT ONE
### (Declaratory Judgment – Post-Termination Obligations)

36. ODC incorporates by reference the allegations of each and every of the preceding paragraphs as if fully set forth herein.

37. Pursuant to 28 U.S.C §§ 2201 and 2202, the Court has jurisdiction to determine disputes between ODC, on the one hand, and ODCN, on the other, concerning the parties' respective obligations and performance under the Distribution Agreement.

38. A dispute currently exists between the parties as to whether ODCN properly discharged its obligations under the Distribution Agreement.

39. To resolve this dispute, ODC requests that the Court declare that: (a) ODCN breached the Distribution Agreement by failing to fulfill its post-termination obligations under the agreement; (b) ODCN's breach as described above constitutes a material default under the Distribution Agreement that cannot be remedied or cured under the facts and circumstances presented; and (c) ODCN is obligated to fulfill its post-termination obligations, which consist of, among other things, (i) ceasing use of the ODC Marks and (ii) returning any telephone number used in distribution of ODC's products, including but not limited to the telephone numbers 203-838-3020 and 203-853-9936.

## COUNT TWO
### (Breach of Contract – Post-Termination Obligations)

40. ODC incorporates by reference the allegations of each and every of the preceding paragraphs as if fully set forth herein.

41. ODCN breached the express provisions of the Distribution Agreement by failing and refusing to cease using the tradenames "OVERHEAD DOOR" and "OVERHEAD" in its business name and failing and refusing to transfer to ODC the telephone numbers that ODCN used when selling ODC's products.

42. ODC was damaged by these breaches, and an order of specific performance is appropriate.

43. ODC is likely to succeed on the merits of its claims against ODCN.

44. ODCN's actions have damaged ODC in ways, extents and amounts to be further ascertained. In addition, ODC will suffer irreparable harm if the Court does not grant injunctive relief with respect to its claims against ODCN's use of "OVERHEAD DOOR" and "OVERHEAD" as part of its business name and its claims against ODCN with respect to its telephone number. Any harm is outweighed by the harm to ODCN if no injunction is entered. Such an order would not be adverse to the public interest.

## COUNT THREE
### (Breach of Contract – Payment)

45. ODC incorporates by reference the allegations of each and every of the preceding paragraphs as if fully set forth herein.

46. ODCN failed to pay the balance of its account when the Distribution Agreement was terminated.

47. This failure to pay breached the Distribution Agreement and terms of ODCN's purchases from ODC.

48.     ODC was damaged by this breach.

## COUNT FOUR
### (Specific Performance)

49.     ODC incorporates by reference the allegations of each and every of the preceding paragraphs as if fully set forth herein.

50.     ODCN acknowledged in the Distribution Agreement that it understood and recognized that the obligations imposed under the termination provision related to "items of a unique nature and are otherwise of such a nature as not to be compensable by damages and therefore agree that specific performance of any such obligations made be decreed in an appropriate proceeding."

51.     Monetary damages alone are inadequate to protect the expectation interest of ODC, which revolves around the return of its good will, making it difficult to procure a suitable substitute performance with a damages award.

52.     Thus, ODC seeks an order compelling ODCN to comply with its post-termination obligations under the Distribution Agreement by, including but not limited to, (i) removing or directing the removal from its business entity name and/or any d/b/a ODC's trade-names OVERHEAD DOOR and OVERHEAD; (ii) removing or directing the removal of the references to the ODC Marks, including but not limited to, OVERHEAD DOOR and/or OVERHEAD from any and all marketing materials, websites and/or any other materials used in connection with ODCN's business; and (iii) contacting the telephone company(s) servicing its business telephone(s) and taking any steps necessary to transfer to ODC in accordance with the Distribution Agreement any telephone numbers that ODCN used when it sold and marketed ODC's products, including but not limited to 203-838-3020 and 203-853-9936. Absent an award of specific performance, ODCN will fail, and continue to fail, its contractual duties.

## COUNT FIVE
**(Trademark Infringement as to the '028 Ribbon Mark – 15 U.S.C. § 1114(1))**

53. ODC incorporates by reference the allegations of each and every of the preceding paragraphs as if fully set forth herein.

54. ODC is the owner of the '028 Ribbon Mark.

55. Upon information and belief, ODCN, without ODC's consent, continued after termination of the Distribution Agreement and/or may continue to market and promote products that are not ODC's products through the unauthorized use of the '028 Ribbon Mark, and such has caused and/or is likely to cause confusion, to mistake, or to deceive prospective or actual customers as to whether ODCN is affiliated, connected or associated with ODC's distribution of home products, in violation of 15 U.S.C. § 1114(1).

56. ODCN's general continued use of the '028 Ribbon Mark has damaged ODC in ways and extents to be further determined.

57. ODC is likely to succeed on the merits of its claims against ODCN.

58. ODCN's actions have damaged ODC in ways, extents and amounts to be further ascertained. In addition, ODC will suffer irreparable harm if the Court does not grant injunctive relief with respect to its claims against ODCN's use of the '028 Ribbon Mark if ODCN indeed continues this use. Any harm is outweighed by the harm to ODCN if no injunction is entered. Such an order would not be adverse to the public interest.

## COUNT SIX
**(False Designation of Origin as to the '028 Ribbon Mark – 15 U.S.C. § 1125(a))**

59. ODC incorporates by reference the allegations of each and every of the preceding paragraphs as if fully set forth herein.

60. Upon information and belief, ODCN, without ODC's consent, continued after termination of the Distribution Agreement and/or may continue using the '028 Ribbon Mark in

commerce in connection with goods and services, which as and/or is likely to cause confusion, or cause mistake or to deceive consumers as to the affiliation, connection or association of ODCN with ODC, or as to the origin, sponsorship, or approval of its goods, services or commercial activities by ODC, in violation of 15 U.S.C. § 1125(a).

61. Upon information and belief, the use by ODCN, after termination of the Distribution Agreement, of the '028 Ribbon Mark in connection with its goods, services and commercial activities was in bad faith and in willful disregard of ODC's rights, with intent to trade on and appropriate the reputation and goodwill which ODC has built up in the '028 Ribbon Mark, and to divert consumers and revenues from ODC.

62. ODCN's actions have damaged ODC in ways, extents and amounts to be further ascertained. In addition, the aforementioned actions and activities of ODCN have caused and/or will continue to cause damage and irreparable harm and injury to ODC unless and until such time as enjoined by this Court if such use does indeed continue. Any harm is outweighed by the harm to ODC if no injunction is entered. Such an order would not be adverse to the public interest.

## COUNT SEVEN
(Unfair Competition as to the '028 Ribbon Mark – 15 U.S.C. § 1125(a))

63. ODC incorporates by reference the allegations of each and every of the preceding paragraphs as if fully set forth herein.

64. Upon information and belief, without ODC's consent, ODCN continued after termination and/or continues to use the '028 Ribbon Mark in commerce in connection with distribution of residential and light commercial garage doors for other manufacturers, which was and/or is likely to cause confusion, or cause mistake, including initial interest confusion, or to deceive consumers as to the affiliation, connection or association of ODCN with ODC, or as to

the origin, sponsorship, or approval of ODCN's goods or commercial activities by ODC, in violation of 15 U.S.C. § 1125(a).

65. Upon information and belief, ODCN's use of the '028 Ribbon Mark after termination was in bad faith and in willful disregard of ODC's rights, with intent to trade on and appropriate the reputation and goodwill that ODC has built up in the '028 Ribbon Mark, and to divert customers and revenue from ODC.

66. ODCN's actions have damaged ODC in ways, extents and amounts to be further ascertained. In addition, the aforementioned actions and activities of ODCN have caused and/or will continue to cause damage and irreparable harm and injury to ODC unless and until such time as enjoined by this Court if such use does indeed continue. Any harm is outweighed by the harm to ODC if no injunction is entered. Such an order would not be adverse to the public.

## COUNT EIGHT
(Trademark Dilution as to the '028 Ribbon Mark – 15 U.S.C. § 1125(c))

67. ODC incorporates by reference the allegations of each and every of the preceding paragraphs as if fully set forth herein.

68. The '028 Ribbon Mark used in connection with OVERHEAD DOOR is distinctive and famous, having been used by ODC in connection with the promotion and sale of its goods for over seventy years.

69. Upon information and belief, ODCN used the '028 Ribbon Mark after termination and without authorization after that Mark became famous, and thereby caused, and is causing, the dilution of the distinctive quality of the '028 Ribbon Mark in violation of 15 U.S.C. § 1125(c).

70. Upon information and belief, the use by ODCN after termination of the '028 Ribbon Mark in connection with its goods and commercial activities was in bad faith and in

13

willful disregard of ODC's rights, with intent to trade on and appropriate the reputation and goodwill that ODC has built up in the '028 Ribbon Mark, and to divert customers and revenue from ODC.

71.  ODCN's actions have damaged ODC in ways, extents and amounts to be further ascertained. In addition, the aforementioned actions and activities of ODCN have caused and/or will continue to cause damage and irreparable harm and injury to ODC unless and until such time as enjoined by this Court if such use does indeed continue. Any harm is outweighed by the harm to ODC if no injunction is entered. Such an order would not be adverse to the public interest.

## PRAYER FOR RELIEF

**WHEREFORE,** ODC respectfully prays for relief as follows:

(a) that the Court enter a declaratory judgment in its favor and against ODCN, declaring as follows:

    (1) ODCN has breached the Distribution Agreement by failing to fulfill its post-termination obligations under the agreement;

    (2) ODCN's breach of the Distribution Agreement constitutes a material default under the agreement that cannot be remedied or cured under the facts and circumstances presented; and

    (3) ODCN is obligated to fulfill its post-termination obligations, which consist of, among other things, (i) ceasing use of the ODC Marks and (ii) returning any telephone number used in distribution of ODC's products, including but not limited to the telephone numbers 203-838-3020 and 203-853-9936;

(b) that the Court enter an order that ODCN and its affiliates, officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, be enjoined and restrained during the pendency of this action and permanently thereafter from:

    (1) using or infringing upon the '028 Ribbon Mark;

    (2) making any commercial misrepresentations whatsoever with respect to the infringing services at issue that either falsely designate ODC as affiliated with ODCN's services or is otherwise false or misleading;

    (3) making unauthorized use of or infringing upon the ODC Marks;

    (4) engaging in any other conduct that would cause or is likely to cause confusion, mistake, or misunderstanding as to the source, affiliation, connection, or association of ODCN or its services with ODC or ODC's services; and

    (5) competing unfairly with ODC in any manner;

(c) that the Court enter an order of specific performance that ODCN must:

    (1) remove or direct the removal from its business entity name and/or any d/b/a ODC's trade-names OVERHEAD DOOR and OVERHEAD;

    (2) remove or direct the removal of the references to the ODC Marks, including but not limited to, OVERHEAD DOOR and/or OVERHEAD from any and all marketing materials, websites and/or any other materials used in connection with ODCN's business; and

(3)   contact the telephone company(s) servicing its business telephone(s) and take any steps necessary to transfer to ODC in accordance with the Distribution Agreement any telephone numbers that ODCN used when it sold and marketed ODC's products, including but not limited to 203-838-3020 and 203-853-9936;

(d)   that the Court award money damages in sums to be determined;

(e)   that the Court increase the damages awarded to ODC up to three times, and that ODC be awarded its costs and attorney's fees, pursuant to 15 U.S.C. § 1117 and/or as otherwise provided by law;

(f)   that ODCN be ordered to pay punitive damages and/or enhanced compensatory damages as provided by law;

(g)   that ODC be awarded all payments due and owing under the Distribution Agreement and/or for ODC products delivered;

(h)   that ODC be awarded pre- and post-judgment interest; and

(i)   that the Court award such other relief as the Court may deem just and proper.

PLAINTIFF
OVERHEAD DOOR CORPORATION


By: ___/s/Bethany L. Appleby_____
       Bethany L. Appleby (ct18418)
       Christine Jean-Louis (ct28432)
       WIGGIN AND DANA LLP
       One Century Tower
       P.O. Box 1832
       New Haven, CT 06508-1832
       (203) 498-4400
       (203) 782-2889 fax
       bappleby@wiggin.com
       cjean-louis@wiggin.com

       *Its Attorneys*

23216/1/2885074.5